IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMERICAN SENTINEL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Case No. 6:23-cv-03230-MDH |
| DAY & NIGHT TRUCKING, INC., and TOTAL QUALITY LOGISTICS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Before the Court is plaintiff American Sentinel's Motion for Summary Judgment (Doc. 17) and defendant Total Quality Logistic's LLC's Motion for Summary Judgment. (Doc. 36). Plaintiff ASI filed a Complaint for Declaratory Judgment asking the Court to declare that it does not owe Day & Night a duty to defend it against the claims asserted by TQL in the underlying lawsuit; and that it does not owe Day & Night a duty to indemnify it for the claims asserted by TQL in the underlying lawsuit. Plaintiff has moved for summary judgment on its claims.[1]

Defendant TQL states that ASI's Motion for Summary Judgment also seeks additional relief that is not requested in its Complaint, specifically that ASI does not owe TQL a duty to defend it against the claims asserted by Melissa Stackpole and that ASI does not owe TQL a duty to indemnify it against any award of damages to Melissa Stackpole for her claims against TQL. Defendant's motion for summary judgment argues that ASI owes TQL and Day & Night a duty to defend and indemnify.

---

[1] To date, Day & Night has not appeared in, or participated in, this litigation.

1

## BACKGROUND

On June 9, 2020, in Pulaski County, Missouri, Niranjan Mann was operating a 2019 Freightliner tractor trailer owned by his employer, Day & Night Trucking, with a shipment brokered by TQL, when he traveled off the roadway overturning the trailer and spilling some of the load on the roadway. A multi-vehicle accident ensued, resulting in the death of Jimmy Stackpole.

Plaintiff filed an interpleader action in the Circuit Court of Pulaski County, Missouri and named Jimmy Stackpole's widow, Melissa Stackpole, as a defendant. Melissa Stackpole then filed a third-party petition against Day & Night Trucking and TQL asserting claims for wrongful death and negligence. Plaintiff paid the policy limits into the state court's registry, and on November 18, 2022, the court entered an order disbursing those funds among the various interpleader defendants, including Melissa Stackpole, who received an allocation of $796,500. On May 29, 2023, TQL filed a third-party petition against Day & Night, claiming breach of an indemnification agreement between those parties.

## UNDERLYING FACTS

On February 28, 2017, Day & Night entered into a Broker/Carrier Agreement with TQL for loads brokered by TQL. The "carrier" in the agreement referred to the trucking company. The term of the agreement was one year, with automatic renewal for additional one-year terms, unless otherwise terminated by either party. The agreement provides in pertinent part:

> 10. INDEMNIFICATION. CARRIER agrees to defend, indemnify, and hold BROKER and CUSTOMERS harmless from and against any and all claims or liability (including, without limitation, Workers' Compensation claims), arising out of or in any way related to CARRIER's negligence, willful misconduct, acts, omissions, or performance or failure to perform under this Agreement, including, without limitation, claims or liability for cargo loss and damage, theft, delay, damage to property, and bodily injury and/or death. Except for Workers 'Compensation claims, CARRIER shall not be required to indemnify any party

2

(including BROKER) for claims or liability that are directly and solely caused by the negligence or willful misconduct of that party.

The Broker/Carrier Agreement required Day & Night to name TQL as an additional insured and "obtain an automatic additional insured endorsement which shall apply to TQL."

Plaintiff issued a commercial auto liability insurance policy to Day and Night that insured the tractor trailer being operated by Mann at the time of the accident.[2] The Policy had limits of liability for property damage and bodily injury of $1 million per accident.

The policy provides:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
[…]

[…] Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**B. Exclusions**

This insurance does not apply to any of the following:
[…]

2. Contractual Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:
a. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or
b. That the "insured" would have in absence of the contract or agreement.
[…]

**B. Limit Of Insurance**

[…]
Regardless of the number of covered "autos", "insureds", premiums paid, claims

---

[2] Policy No. FCT 002800-01 ("the Policy"), with a policy period of July 1, 2019 to July 1, 2020.

made or vehicles involved in the "accident", the most we will pay for the total of all damages […] resulting from any one "accident" is the Limit Of Insurance for the Covered Autos Liability Coverage shown in the Declarations.

**SECTION VI – DEFINITIONS**

[…]
H. "Insured contract" means:
[…]

5. That part of any other contract or agreement pertaining to your business […] under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; […]

On or about June 8, 2020, Day & Night also entered into a Rate Confirmation with TQL for the load being transported by Day & Night at the time of the accident. The Rate Confirmation between Day & Night and TQL contained an indemnification provision. The Rate Confirmation states:

> CARRIER AGREES TO INDEMNIFY AND HOLD TQL HARMLESS TO THE FULLEST EXTENT PERMITTED BY LAW FOR ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO THE HAULING OF THIS LOAD, THE VIOLATION OF THE TERMS OF THE BROKER-CARRIER AGREEMENT OR THIS RATE CONFIRMATION.

Melissa Stackpole's third-party petition against Day & Night and Niranjan Mann assert claims for wrongful death and negligence. Section XI of the third party petition, Count VIII, sets forth allegations against TQL. The allegations against TQL arise out of negligence and state in part:

> defendant Total Quality breached the duty it owed to public motorists, generally, and to Jimmie Stackpole, Jr., specifically, and was negligent in one or more of the following ways, either separately, in the alternative, or in combination: In failing to investigate the safety rating of Day & Night; In failing to ensure that Day & Night had an adequate safety rating; In failing to investigate the number of crashes Day & Night trucks had previous to Total Quality hiring Day & Night to transport a load; In failing to ensure Day & Night did not have a history of logbook violations, mechanical defects of Day & Night trucks and trailers, and non-compliance with Department of Transportation rules and regulations; In failing to investigate Day &

Night's business practices in forming and dissolving similar companies to avoid Department of Transportation rules and regulations; In illegally brokering a load to Day & Night in violation of 49 U.S.C. § 14916; In failing to ensure that Day & Night was a qualified motor carrier; h. In failing to properly record the brokerage between Total Quality and Day & Night in violation of 49 C.F.R. 371.3; In failing to ensure that Day & Night was in compliance with all Federal Motor Carrier Safety Administration compliance reviews and safety audits as required by 49 C.F.R. § 385; j. In failing to ensure that Day & Night had adequate levels of financial responsibility in violation of 49 C.F.R. § 387; k. In failing to ensure Day & Night was using qualified drivers in violation of 49 C.F.R. § 397; In failing to ensure Day & Night was using safe vehicles while operating on the highways in violation of 49 C.F.R. § 393; m. In failing to ensure Day & Night did not use fatigued drivers in violation of 49 C.F.R. § 395; n. In failing to ensure that Day & Night maintained proper accident registers and copies of accident reports in violation of 49 C.F.R. § 390; and o. In failing to ensure Day & Night performed adequate inspections, repairs, and maintenance of its vehicles. As a direct result of Third-Party Defendant Total Quality's negligence, Third-Party Defendant Day & Night was assigned a load by Third-Party Defendant Total Quality, despite Third-Party Defendant Day & Night's lack of safety and fitness to transport such a load and which ultimately caused injuries and Jimmie's death and caused Third-Party Plaintiff's damages.

As a direct and proximate result of the carelessness and negligence of Third-Party Defendant Total Quality, Jimmie suffered severe injuries with said injuries resulting in Jimmie's death on June 9, 2020.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure states that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact." Further, when ruling on a motion for summary judgment, the court should "view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence." *Cunningham v. Kansas City Star Co*., 995 F.Supp. 1010, 1013 (Mo. App. W.D. 1998). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. (citing Anderson v. Liberty Lobby, Inc., 477 US. 242, 248 (1986)).

## DISCUSSION

**A. Total Quality Logistics - The Stackpole Claim**

Plaintiff argues TQL is not an "insured" under the policy and cites the policy language that states:

> [American Sentinel] will pay all sums an "insured" legally must pay as damages because of "bodily injury" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto." It further provides that American Sentinel "will have the right and duty to defend any 'insured' against a 'suit' asking for such damages […].

Plaintiff contends for TQL to have any claim to liability coverage, it must qualify as an "insured" as that term is defined by the policy.

The policy first defines an "insured" as "[y]ou for any covered auto. At page one of the Motor Carrier Coverage Form, the policy states: "'[y]ou' and 'your' refer to the Named Insured shown in the Declarations." Day & Night Trucking is the only named insured shown in the declarations. As a result, TQL is not an "insured" under that provision of the agreement.

At Section II (A)(1)(e), the policy defines an insured to include "[a]nyone liable for the conduct of an 'insured' but only to the extent of that liability." TQL argues it is an insured under this policy because it may face liability for the conduct of an insured, specifically Ms. Stackpole's wrongful death claim that arises out of an accident involving Day & Night. Ms. Stackpole claims TQL negligently brokered a load to Day & Night and that as a result of the accident her husband was killed.

However, Plaintiff argues Ms. Stackpole does not contend TQL is vicariously liable for the conduct of Day & Night. Ms. Stackpole does not bring a claim of respondent superior or other theory of derivative liability. Instead, Ms. Stackpole's allegations are based on TQL's negligence. Under Ms. Stackpole's lawsuit, if TQL is deemed liable based on any allegation contained in her

6

Case 6:23-cv-03230-MDH    Document 40    Filed 09/23/24    Page 6 of 10

amended third-party petition, such liability would stem from the independent negligence of TQL. Plaintiff states any such liability would not constitute liability for the conduct of Day & Night. Plaintiff argues this theory does not qualify TQL as an insured under Section II (A)(1)(e). In response, TQL argues it was sued because of its contractual relationship with Day & Night, and the resulting alleged negligence of Day & Night and therefore it is an "insured" under the agreement.

However, without determining whether TQL is an insured, Plaintiff also argues the policy limits at issue have been exhausted. The subject policy provides that: "[o]ur duty to defend or settle ends with the Covered Autos liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements." Here, the per accident policy limits of $1 million have been exhausted. The parties do not dispute that Plaintiff paid the funds into the state court's registry and that the funds have since been disbursed to the various claimants. This Court agrees, for the reasons set forth in Plaintiff's briefs, that Plaintiff's duty to defend or indemnify any insured has ended because the policy limits have been exhausted.

### B. Day & Night Trucking - The TQL Claim

In addition, Plaintiff argues the policy does not cover the underlying breach of contract claim. Plaintiff contends with respect to TQL's claim against Day & Night for breach of the Broker/Carrier Agreement, the subject policy imposes no obligation on the part of Plaintiff to defend Day & Night because the insurance policy does not cover liability for breach of contract.

Under Section II(B)(2), the policy excludes: "liability assumed under any contract or agreement." The policy further provides, this exclusion does not apply to liability for damages that: (a) are "assumed in a contract or agreement that is an 'insured contract'", or (b) "that the 'insured' would have in the absence of the contract or agreement."

7

At Section VI(H)(5), an "insured contract" is defined to include:

That part of any other contract or agreement pertaining to your business […] under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; […]

The indemnity clause of the Broker/Carrier Agreement provides:

10. INDEMNIFICATION. CARRIER agrees to defend, indemnify, and hold BROKER and CUSTOMERS harmless from and against any and all claims or liability […], arising out of or in any way related to CARRIER's negligence […], including, without limitation, claims or liability for […] bodily injury and/or death. […] CARRIER shall not be required to indemnify any party (including BROKER) for claims or liability that are directly and solely caused by the negligence or willful misconduct of that party.

Plaintiff argues under the plain language of the agreement, Day & Night did not assume the tort liability of TQL. Rather, Day & Night agreed to indemnify TQL against any claims arising out of its own (Day & Night's) negligence. Plaintiff contends the contract provides some protection to TQL from claims alleging TQL is liable for the conduct of Day & Night under a theory of vicarious liability. Further, the indemnity clause specifies that Day & Night is not assuming any liability for claims based on the negligence of TQL. Plaintiff argues the indemnity agreement is not an "insured contract" and the insurance policy does not provide any coverage to Day & Night for TQL's breach of contract claims.

However, Plaintiff again argues the same reasoning applies to this claim. Plaintiff has paid the full amount of the per accident policy limits of $1 million into the state court's registry and the funds have since been disbursed to the parties by order of the state court.

Here, regardless of whether the subject policy provides coverage for the breach of contract claims against Day & Night, Plaintiff's duty to defend or indemnify any insured has ended because the policy limits have been exhausted.

8

### C. Rate Confirmation

Finally, TQL argues an additional agreement applies to Plaintiff's duty to defend and indemnify. TQL and Day & Night executed a rate confirmation that served as an addendum to the Broker/Carrier Agreement. The Rate Confirmation provides as follows:[3]

> THIS AGREEMENT IS SUBJECT TO THE TERMS OF THE BROKER/CARRIER AGREEMENT SIGNED BY THE CARRIER AND TQL. THIS AGREEMENT IS AN ADDENDUM TO THE BROKER/CARRIER AGREEMENT.

TQL argues it is an "insured" under ASI's Policy Insurance because the Broker/Carrier Agreement and Rate Confirmation are "insured contracts" under ASI's policy obligating ASI to indemnify and defend Day & Night. Further, TQL argues Day & Night agreed to indemnify TQL for TQL's own alleged negligence, so the insured contract exception in the ASI policy applies.

The Court finds this argument unpersuasive. For the reasons previously stated the Court finds in favor of Plaintiff.

### DECISION

After a review of the record before the Court, and regardless of whether TQL is an insured under the policy,[4] the subject policy provides that Plaintiff's "duty to defend or settle ends with the Covered Autos liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements." Here, it is undisputed that the per accident policy limits of $1 million have been exhausted by Plaintiff's payment of those funds into the state court's registry. The

---

[3] The Broker/Carrier Agreement provides that it "shall be governed by the laws of the State of Ohio … without giving effect to conflict of law provisions which would result in the application of any law other than Ohio law." The choice of law with regard to this agreement is irrelevant based on the Court's determination that the funds have been exhausted.

[4] While the Court does not find it necessary to determine whether TQL is an insured the Court does agree with the arguments set forth in Plaintiff's briefing that TQL is not an insured pursuant to the agreement.

9

parties do not dispute that those funds have since been disbursed to the various claimants. As a result, this Court agrees that regardless of whether TQL is an insured under the policy, Plaintiff's duty to defend or indemnify any insured has ended because the policy limits have been exhausted.

Wherefore, the Court **GRANTS** Plaintiff's motion for summary judgment and enters judgment in favor of Plaintiff and against defendants. (Doc. 17). Defendant TQL's motion for summary judgment is **DENIED**. (Doc. 36).

**IT IS SO ORDERED.**

Dated: September 23, 2024

      */s/ Douglas Harpool*
      **DOUGLAS HARPOOL**
      **UNITED STATES DISTRICT JUDGE**